IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS GEIGER, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:06-CV-636 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| PFIZER, INC., | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Chris Geiger brings this action against Defendant Pfizer Inc., alleging disability discrimination and retaliation under federal and Ohio law. This matter is before the Court on Pfizer's motion for summary judgment. For the reasons stated below, Defendant's motion is **DENIED**.

**II. BACKGROUND**

**A. Facts**

1. Geiger's Employment with Pfizer

Geiger is a fifty-five year old pharmaceutical sales representative with over twenty-nine years of experience in the industry. In June of 2000, Pfizer acquired Geiger's employer, Warner-Lambert, and Geiger became an employee of Pfizer. Geiger was employed by Pfizer as a professional healthcare representative ("PHR"). PHR's are responsible for making field calls on physicians, selling and promoting Pfizer pharmaceutical products, hosting speaker programs for physicians, and a variety of administrative tasks. PHR's are evaluated with mid-year and year-end performance reviews prepared by their district managers. Fifty-percent of a PHR's

performance review is based on reaching sales quotas, and the other fifty-percent evaluates intangible qualities such as teamwork and territory optimization. A PHR's performance reviews determine her salary increases and bonus levels.

During her first few years with Pfizer, Geiger's evaluations were above average. Geiger stated that she sometimes worked up to 70-80 hours a week as a PHR for Pfizer, and as a result of her work, Geiger earned multiple awards from Pfizer for her sales performance. She received peer-voted awards in 2001 and 2002, and earned multiple sales awards through 2004 for attaining some of the highest sales numbers in her region. From 2004 forward, however, Geiger's district managers began to critique her for sub-par attention to administrative detail and unwillingness to accept constructive criticism. These critiques of her non-sales related performance began to effect her mid-year and year-end reviews. Geiger's manager rated her year-end performance for 2004 at "below expectations" in multiple non-sales categories, but Geiger was able to meet expectations in all categories by the 2005 mid-year review. Outside of isolated incidences of constructive criticism and feedback, Geiger was able to stay at expectation-level until her 2006 year-end review where she was again evaluated as below expectations in multiple non-sales related categories.

### 2. Geiger's Medical Condition and Request for Accommodation

In March of 2001, Geiger was diagnosed with fibromyalgia and several months later she was also diagnosed with narcolepsy.[1] As a result of these impairments, Geiger suffers from

---

[1] Fibromyalgia is a chronic condition characterized by widespread pain in the muscles, ligaments and tendons, as well as fatigue and multiple tender points. Narcolepsy is a chronic sleep disorder characterized by overwhelming daytime drowsiness and sudden attacks of sleep. <http://www.mayoclinic.com> (last modified Jun. 20, 2008).

muscle pains and severe fatigue. After the initial diagnosis, Geiger continued to perform the duties of a PHR without accommodation.  In March 2004, however, Geiger made her first request for accommodation from Pfizer via a letter written by her attorney.  In the letter, Geiger requested that Pfizer provide her with accommodation over the upcoming few months and specifically asked that her schedule be limited to a 40-hour workweek.  On May 5, 2004, Pfizer's medical director for human resources, Dr. Howard Chester, sent Geiger a response letter ("May 5 Letter") stating that her impairments did not qualify for Pfizer disability benefits, but that they did qualify under the ADA and thus she was approved for the work-related accommodation of 8-hour workdays.  Soon thereafter, Pfizer made it clear that the May 5 Letter only intended to give Geiger 8-hour workdays for a limited period of time, and that she would be required to resume working over 40 hours a week.

Although both parties agree that Geiger formally requested the accommodation of a 40-hour workweek in March 2004, there is disagreement as to what alternative accommodations were discussed once Pfizer made it clear that a permanent 40-hour workweek was not possible. Pfizer alleges that Geiger's managers and its employee health services ("EHS") presented Geiger with numerous alternative accommodation options, even though Geiger would not engage in discussion about any option other than a 40-hour workweek.  Specifically, Pfizer asserts that it offered Geiger the following accommodation options: flexible start-times; permission to modify her daily schedules to incorporate rest during the day; afternoon naps; relaxed sales presentation requirements; and equipment to help with the physical burden of moving around her pharmaceutical sales materials.  Geiger, on the other hand, alleges that Pfizer turned its back on her once it rescinded the 40-hour workweek option, and that the only accommodations she was

offered were an unworkable afternoon nap arrangement and an unrealistic promise to allow her 8 hours of sleep per night.

### B. Procedural History

On October 21, 2004, Geiger filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). Geiger alleged that Pfizer refused to provide her a reasonable accommodation, discriminated against her because of her disability, and retaliated against her for seeking accommodation. Geiger filed a second charge of discrimination with the OCRC and the EEOC on March 16, 2005, alleging that her poor evaluation in the 2004 year-end performance review was retaliation for filing her first charge. The OCRC dismissed both charges, determining that there was no probable cause. On June 16, 2006, the EEOC gave Plaintiff her right to sue notice pursuant to her March 2005 charge of discrimination.

On July 26, 2006, Geiger filed a complaint against Pfizer with this Court raising the following three claims: (1) an Ohio law claim for disability discrimination under Ohio Rev. Code §§ 4112.02 and 4112.99; (2) a federal claim for retaliation under 42 U.S.C. § 12203; and (3) an Ohio law claim for retaliation under Ohio Rev. Code §§ 4112.02(I) and 4112.99.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of proving the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether the movant has carried its burden, the Court views the evidence in the light most favorable to the

non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## IV. LAW AND ARGUMENT

### A. Disability Discrimination

Geiger brings suit under Ohio Rev. Code § 4112, which follows the same analysis as the Americans with Disabilities Act. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007) (holding that federal case law interpreting the ADA applies to discrimination claims under Ohio Rev. Code § 4112). Geiger asserts that she is disabled as defined by the ADA, and that Pfizer discriminated against her by failing to provide her with a reasonable accommodation for her disability. To prevail on her failure to accommodate claim, Geiger must establish: (1) that she is disabled; (2) that she is qualified for the job with or without reasonable accommodation; and (3) that she was denied a reasonable accommodation. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).

#### 1. Disability

The ADA defines disability as either a physical or mental impairment that substantially limits one or more of the major life activities of an individual, or being regarded as having such an impairment. 42 U.S.C. § 12102(2). The Supreme Court has established a three-step test to determine whether a plaintiff's impairment qualifies as a disability: (1) determine whether the individual suffers from a physical or mental impairment; (2) if so, determine whether the individual has identified a major life activity under the ADA; and (3) analyze whether the

individual's impairment substantially limits that major life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). In relevant part, the EEOC defines "substantially limits" as being "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(ii). Finally, "major life activities" are described as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). In the present case, Geiger claims that her physical impairments constitute a disability under the ADA, and even if they did not, that Pfizer regarded her as being disabled.

Defendant rightfully concedes that sleep is a major life activity, but argues that Geiger's irregular sleeping patterns and fatigue do not substantially limit any major life activity. Pfizer cites deposition testimony of Geiger and her husband, where they state that she regularly sleeps throughout the night and that she is often able to use prescription drugs effectively to stay awake and focused when necessary. Geiger also admitted to being able to perform all the duties required of her work, housework, gardening, manual tasks, and even competitive horse-back riding until suffering an injury doing so in 2007. In support of its argument, Pfizer relies on a string of Sixth Circuit cases which held that fatigue caused by sleep impairments does not rise to the level of substantial limitation on a major life activity, especially where the effects of the sleep impairment can be effectively mitigated. *See Boerst v. Gen. Mills Oper., Inc.*, 25 F. App'x 403, 407 (6th Cir. 2002) (holding that inability to concentrate or maintain stamina due to sleeplessness do not qualify as major life activities under the ADA, and that a need to work 8

hours a day or less does not qualify as a substantial limitation under the ADA); *see also, Linser v. State of Ohio, Dep't of Mental Health*, 234 F.3d 1268 (6th Cir. 2000) (unpublished) (holding that where sleeping problems are infrequent and can be controlled through medication, no substantial limitation exists for ADA purposes).  Pfizer, therefore, argues that Geiger cannot demonstrate that her impairments substantially limit a major life activity.

Geiger counters that her narcolepsy and fibromyalgia leave her constantly fatigued, and thus represent a substantial limitation on the major life activity of sleeping.  Specifically, Geiger cites her inability to get restorative sleep as the cause of the substantial limitation.   Geiger, however, is unable to point to any Sixth Circuit case law in support of her argument.  Instead, Geiger relies on the May 5 Letter, whereby Chester explained that she does "have a qualifying condition under the Americans with Disabilities Act" for purposes of being granted work-related accommodation.  Geiger argues that this admission demonstrates that she is disabled under the ADA.

Geiger's argument is not well-taken.  First, the May 5 Letter was written by a Pfizer representative and has no legal significance for this Court's consideration of whether Geiger was actually disabled during the time-period in question.  Second, as the Sixth Circuit has repeatedly held, fatigue caused by sleep-related impairments does not represent a substantial limitation on a major life activity.  *See Boerst*, 25 F. App'x at 407.  Further, where such impairments are irregular or can be effectively mitigated by treatment, no substantial limitation exists.  *See Linser*, 234 F.3d at 1268.  Geiger, therefore, cannot demonstrate that she was disabled as defined under 42 U.S.C. § 12102(2)(A).

The Court finds, however, that Geiger can meet the § 12102(2)(C) definition of disability because the May 5 Letter indicates that Pfizer regarded Geiger as disabled for ADA purposes. The Supreme Court has held that the "regarded as" prong of the ADA means that: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999).

In the May 5 Letter, Chester openly admitted that Pfizer believed Geiger had a disability that met the requirements set forth in the ADA. While Pfizer is correct to note that the letter did not legally establish that Geiger was indeed disabled, Pfizer fails to account for the fact that it creates a virtually irrefutable indication that Pfizer regarded Geiger as having a disability. Under § 12102(2)(C), being regarded as having a disability by your employer, regardless of whether or not you are actually disabled, meets the ADA's definition of disability. Therefore, the Court finds that the May 5 Letter does more than just create a genuine dispute of material fact—it demonstrates that Pfizer regarded Geiger as being disabled.

## 2.  Otherwise Qualified

To prove discrimination by an employer for the employer's failure to accommodate, the plaintiff must demonstrate that she was an "otherwise qualified" individual with a disability—"one who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12112(b)(5)(A). *Penny*, 128 F.3d at 414. Here, Pfizer does not dispute that Geiger is an

otherwise qualified individual. The Court is satisfied that her twenty-nine-plus year career in pharmaceutical sales demonstrates that she is qualified to be a PHR.

### 3. Reasonable Accommodation

The ADA provides that "[i]t is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9. On a failure to accommodate claim, a plaintiff must show that she is disabled, she is qualified with or without reasonable accommodation, and she was denied a reasonable accommodation. *Penny*, 128 F.3d at 414. A covered employer has the responsibility to engage in an informal, interactive process to determine whether an accommodation is possible based on the essential functions of her position and her limitations. 29 C.F.R. § 1630.2(o)(3). Further, Sixth Circuit has established that "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d at 871.

Determining the reasonableness of a proposed accommodation requires a case-by-case factual analysis, and the trier of fact must find that the accommodation is objectively reasonable. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996). If it is determined that the proposed accommodation is objectively reasonable, "the defendant employer then bears the burden of showing that the accommodation imposes an undue hardship upon it, given the employer's specific situation." *Id.* In relevant part, the ADA provides that a reasonable accommodation may include "modified work schedules," unless such a modification would constitute an undue hardship. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.9.

Pfizer acknowledges that Geiger took the first step in the interactive process by requesting a 40-hour workweek accommodation, but Pfizer argues that Geiger was unwilling to discuss any other accommodation options and that the 40-hour workweek request was unreasonable.  Pfizer alleges that even though Geiger would not engage in any sort of interactive brainstorming to help it find a reasonable accommodation, it made numerous alternative accommodations offers that were all rejected by Geiger.  Further, Pfizer argues that it had no duty to offer an accommodation that requires changes to or removal of the essential functions of Geiger's PHR position, and that working more than 40 hours a week is essential to that position. *See Brickers v. Cleveland*, 145 F.3d 846, 849 (6th Cir. 1998).

Geiger counters that after rescinding its initial grant of a 40-hour workweek accommodation, Pfizer never proposed a serious or realistic alternative accommodation.  She asserts that Pfizer only offered her the option of afternoon naps, which she claims would not have been workable given her inability to control waking up, and a promise of eight hours of sleep per night, which she asserts is an impossible guarantee by any employer.  Geiger argues that these proposals by Pfizer, after rescinding its decision to allow a 40-hour workweek accommodation, represent a bad faith effort.  Further, Geiger argues that a 40-hour workweek is reasonable and she cites to the deposition of fellow PHR, April Lupfer, who testified that such an accommodation could "probably work."

The Court finds that Geiger's reasonable accommodation claim presents genuine issues of material fact.  First, the only evidence on the record regarding the interactive process between Geiger and Pfizer is disputed deposition testimony about what was offered, and the letter requesting accommodation sent by Geiger's attorney.  While taken as a whole this evidence may

-10-

favor one side at trial, there is a genuine dispute as to why the interactive process broke down and whether both parties acted in good faith.

Second, the Court is not persuaded that there is no genuine issue of material fact as to whether a 40-hour workweek is an essential element of the PHR position. Sixth Circuit case law expresses an unwillingness to determine the factual question of whether a specific element of a job is "essential." *See e.g., Brickers*, 145 F.3d at 849 (holding that "determination of whether a given function is "essential" within the meaning of the ADA and regulations promulgated thereunder is typically a question of fact for the jury and thus not suitable for resolution through a motion for judgment as a matter of law. . . ."). Although the court in *Brickers* ultimately found that the specific job-function at issue in that case could be ruled on as a matter of law at the summary judgment stage, it did so because the specific job-function at issue was outlined by Ohio law. *Id.* In this case, however, there was no written policy detailing the need to work over 40 hours a week, nor can Pfizer demonstrate the necessity of working more than 40 hours a week other than to draw comparisons and use deductive reasoning. Pfizer's reliance on *Brickers* is, therefore, unpersuasive. Pfizer simply reasons that Geiger's duties cannot be completed in a 40-hour week, which is an issue that is soundly within the province of the trier of fact—not an issue that is appropriate for consideration at the summary judgment stage. Thus, the Court **DENIES** Pfizer's motion for summary judgment on Geiger's discrimination claim.

### B. Retaliation

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge. . . under [the ADA]." 42 U.S.C. § 12203(a). To establish a prima

facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that she suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. *Penny*, 128 F.3d at 417. If the plaintiff can establish a prima facie case, the defendant then bears the burden to present a legitimate, non-discriminatory reason for the adverse action. *Id*. Finally, the plaintiff bears the ultimate burden of proving that proffered reason for the action was merely a pretext for discrimination. *Id.*

Pfizer concedes that Geiger engaged in protected activity, and that her below expectations performance reviews constitute adverse employment actions for ADA purposes. Pfizer argues, however, that no causal connection can be shown between Geiger's protected activity and her performance reviews. Specifically, Pfizer argues that more than four months passed between Geiger's first filing of charges with the OCRC and EEOC, and her below expectations performance review in February of 2005. Pfizer also argues that any causal connection between the second filing of charges in April 2005 and her second poor performance review in February 2007 is even more tenuous due to the longer lapse of time. In support, Pfizer relies on *Morgan v. Masterfoods USA, Inc.*, No. 04-907, 2006 WL 3331780, at *12 (S.D. Ohio Nov. 14, 2006), where the court held that "[a]n inference of causation based on timing alone can be drawn only when the interval between the protected activity and the adverse action is very close." Pfizer argues that the temporal proximity in this case is insufficient to demonstrate causality.

Pfizer also argues that, even if she can make out a prima facie case, Geiger cannot prove that its stated reasons for her below expectations performance reviews are pretextual. It argues that the reason for her poor performance reviews were based on non-sales related deficiencies,

and that many of the critiques were related to issues that her managers had brought up with her before she ever engaged in protected activities.  Further, Pfizer notes that the only awards that Geiger earned during the relevant time period were in 2004 and were based on her sales numbers.  Pfizer argues that these awards had no impact on how Geiger was rated for non-sales related performance.

      Geiger responds that the performance reviews in question are two of the lowest she has received in her entire career, and the fact that they came directly after she engaged in protected activity creates a genuine issue of material fact as to causality and pretext.  Geiger points out that while the poor February 2005 performance review did come four months after her first filing of charges, as cited by Pfizer, it was actually the first opportunity that Pfizer had to give her a poor review.  Pfizer only conducts performance reviews twice a year, and thus the February 2005 review (covering performance for 2004) was the first time that Pfizer could have retaliated against Geiger's filing of charges in October 2004.  Geiger also notes that she won two awards from Pfizer for being a top seller in her region during 2004, and yet this was not enough to prevent her from receiving the lowest individual performance review she had ever received.  As a result of this poor review, Geiger's salary and bonus awards were negatively impacted.  Further, in support of her argument that all of Pfizer's explanations are pretextual, Geiger argues that there is no documentation of non-sales related criticisms created before her filing of charges in October 2004.

      Geiger's arguments are well-taken, and the Court finds that a reasonable jury could return a verdict in her favor on her retaliation claim.  There is no dispute that filing charges with the OCRC and EEOC is protected activity under the ADA.  Further, negative performance reviews

that shape a plaintiff's salary structure are clearly adverse. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that an action is adverse if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Internal citations omitted)). Thus, the only questions remaining for this Court on the retaliation claim are whether a causal connection can be made, and whether Pfizer's stated reasons for its adverse actions are pretext for retaliatory conduct.

The Sixth Circuit has made it clear that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). This is particularly the case where the defendant provides reasonable evidence of alternative causation. *Steiner v. Henderson*, 121 F. App'x 622, 628 (6th Cir. 2005) (holding that the Defendant's convincing-alternative explanation for the conduct at issue was sufficient to defeat an allegation of causality based on temporal proximity alone). Thus, Pfizer's reliance on *Morgan* is misplaced.

The temporal proximity between Geiger's October 2004 protected activity and Pfizer's February 2005 adverse action is close, especially considering that it was the first opportunity for such adverse action to be taken. While Pfizer does offer plausible explanations for Geiger's low performance reviews, Geiger has sufficiently demonstrated a genuine issue of material fact as to whether there is causality and whether Pfizer's stated reasons are pretextual. An award winning sales representative who receives low reviews for the first time in her career with her employer, at the first opportunity after filing discrimination charges, creates sufficient dispute of fact to

survive summary judgment. Pfizer's motion for summary judgment on Geiger's retaliation claim is **DENIED**.[2]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 18, 2008**

---

[2] Plaintiff's state retaliation claim is analyzed under the same law as her ADA retaliation claim. *Holt v. Olmsted Tp. Bd. Of Trustees*, 43 F.Supp.2d 812, 827 (N.D. Ohio 1998).