**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRIS GEIGER,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:06-CV-636** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **PFIZER, INC.,** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendant.** | : | |
| | : | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Pfizer, Inc.'s ("Pfizer") and Plaintiff

Chris Geiger's ("Geiger") various pretrial motions. The Court held a Final Pretrial Conference

in this matter on April 15, 2009. At the conference, the Court issued the following rulings on the

parties' motions:

### 1.  The Court GRANTS Pfizer's Motion to Bifurcate (doc. no. 105).

Pfizer moves this Court to bifurcate the issue of punitive damages from the issues of

liability and other damages. Under Ohio law, any tort action tried to a jury in which the plaintiff

makes a claim for compensatory and punitive damages shall be bifurcated upon the motion of

any party. Ohio Rev. Code § 2315.21(B)(1). The initial stage shall relate only to liability and

whether plaintiff is entitled to recover compensatory damages. *Id.* at § 2315.21(B)(1)(a). If the

jury determines in the initial stage that plaintiff is entitled to recover compensatory damages,

evidence with respect to whether plaintiff is entitled to recover punitive damages may be

presented at the second stage of the trial. *Id.* at § 2315.21(B)(1)(b). Pfizer contends that because

Geiger seeks both compensatory and punitive damages for her Ohio law retaliation claim under

Ohio Rev. Code 4112, the trial should be bifurcated. The motion to bifurcate is **GRANTED**.

This case involves statutory violations under state and federal law. Geiger asserts, therefore, that this is not a tort action. It is true that this is not a common-law tort action. Nevertheless, an action brought under Ohio Rev. Code 4112 is a "tort action" as it is "a civil action for damages for injury or loss to person or property." *Ridley v. Fed. Express*, No. 82904, 2004 WL 1119591, at *12 (Ohio Ct. App. May 20, 2004), *citing see* Ohio Rev. Code 2315.21(A)(1); *see also State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 537 (Ohio 1999) (actions brought under § 4112 are discrimination tort cases); *Reilly v. Alcan Aluminum Corp.*, No. 98-3566, 1999 WL 313879, at *3 (6th Cir. May 5, 1999) (recognizing a claim brought under § 4112.14 for age discrimination is a tort claim); *McCombs v. Meijer, Inc.,* 395 F.3d 346, 355 (6th Cir. 2005) (applying the "clear and convincing" standard under § 2315.21 to a jury award under § 4112); *McIntyre v. Advance Auto Parts,* No. 1:04 CV 1857, 2007 WL 120645, at *28 (N.D. Ohio Jan. 10, 2007) (applying the standard for punitive damages under § 2315.21 to a claim under § 4112.99); *Smith v. Glaxo Wellcome*, Inc. No. C-1-96-540, 1998 WL 34024762 (S.D. Ohio June 11, 1998) (bifurcating a trial pursuant to § 2315.21 based on a public policy tort claim for wrongful discharge based on age and sex discrimination). Because this is a tort action under Ohio law involving a request for compensatory and punitive damages, it is mandated this trial be bifurcated upon Pfizer's motion. The first phase of the trial will address the issues of liability and compensatory damages. The second phase, to follow immediately thereafter, will address the issue of punitive damages.

## 2. The Court DENIES in PART and GRANTS in PART Pfizer's Motions in Limine (doc. no. 109).

Pfizer moves this Court to instruct Geiger and her counsel not to refer to, interrogate any witness concerning, or comment on the following: (A) evidence regarding Geiger's medical history; (B) that Geiger is "disabled," has a "disability," or is "regarded as disabled"; (C) the parties communications with the EEOC and OCRC; (D) Geiger's 2004 charge containing allegations of disability discrimination; (E) that any action other than Geiger's 2004 and 2006 performance evaluations and merit increases for those years is an adverse employment action; (F) the reasons why Geiger was denied long-term disability benefits; (G) evidence which is not based on personal knowledge or which constitutes rumor, speculation, or hearsay; (H) subjective opinions by Geiger or Geiger's witnesses regarding alleged retaliation against Geiger or the reasons for or fairness of the performance evaluations and merit increases; (I) evidence of an alleged pattern of discrimination or "me too" evidence; (J) evidence regarding the circumstances surrounding the termination of George Loche and Richard Ferguson; (K) evidence as to back pay damages and benefits allegedly sustained during any period of time Geiger was unable to work due to an unrelated injury; (L) evidence regarding Pfizer's size, financial status, or stature in the pharmaceutical industry; and (M) evidence relating to other claims or lawsuits brought against Pfizer. Pfizer asserts if such testimony and evidence is divulged to the jury, regardless of any objection which may be made, there is a substantial danger of undue prejudice and confusion.

"Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court is generally better suited during trial to assess the value and utility of evidence. *Black v. Columbus Pub. Schs.*, No.

2:96-CV-326, 2007 WL 2713873, at *2 (S.D. Ohio Sept. 17, 2007). The moving party has the burden of showing that the evidence in question is clearly inadmissable, and if the party fails to meet this burden, then evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Id.*

### A.  Testimony and Medical Records Regarding Geiger's Medical History

Pfizer asserts that Geiger's "disability" is irrelevant to her claim of retaliation and all testimony and medical records regarding Geiger's medical history should thereby be excluded. The motion to exclude this evidence is **DENIED**.

The issue to be decided by the jury at trial is whether Pfizer unlawfully retaliated against Geiger, most notably in the ratings and merit increases provided to her in connection with her February 2005 and February 2007 performance reviews. Geiger alleges these actions were made in retaliation for (1) her requesting an accommodation in March of 2004 and December of 2005; and (2) filing charges with the OCRC and EEOC in October 2004 and March 2005. Pfizer anticipates Geiger will attempt to offer evidence at trial regarding her medical conditions and the events leading up to her requests for accommodation in an effort to elicit sympathy from the jury and reintroduce her disability discrimination claim. Pfizer asserts such evidence is irrelevant, and is unfairly prejudicial and potentially confusing to the jury.

Under Fed. R. Evid. 401, evidence is relevant if it has " any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Fed. R. Evid. 403, however, although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). Geiger requested an accommodation for her medical conditions in March of 2004 and December of 2005 and filed charges of discrimination with the OCRC and EEOC in October of 2004 and March of 2005, based on Pfizer's subsequent actions. Evidence related to Geiger's medical conditions is relevant to show that she engaged in protected activities related to those medical conditions, her motivations for engaging in the protected activities, and to provide relevant background information and context.

Further, evidence pertaining to Geiger's medical conditions is probative to show a causal connection between engaging in protected activity related to her medical conditions and the adverse employment actions. Geiger asserts that information related to Geiger's medical conditions will be used to establish that Pfizer had a motive to retaliate against Geiger in an effort to create such an unbearable workplace environment that she would be forced to resign; with her resignation, Pfizer would not have to deal with the additional obligations it would face in having to accommodate Geiger.

The Court already determined that Pfizer is regarded Geiger as disabled. The Court's determination was based on a letter sent by Dr. Chester to Geiger on May 5, 2004. In that letter, Dr. Chester stated that Geiger's impairments were covered under the ADA, and thus she was approved for the work-related accommodation of an 8-hour work day. Geiger asserts that the

letter and information pertaining to Geiger's disabilities will be used to show that Pfizer believed Geiger had addition rights under law because it regarded her as disabled, and that her former managers had a motive to retaliate against her rather than try to accommodate her needs under the law.

This Court finds that Pfizer has not shown that the probative value of this evidence is substantially outweighed by the Fed. R. Evid. 403 considerations. Nevertheless, though Pfizer has not shown that the evidence in question is clearly inadmissable, this Court recognizes that some testimony, particularly from Geiger's physicians, and evidence related to her medical conditions or the impact those conditions have on Geiger's ability to perform her job duties may be inadmissable. This evidentiary ruling will be deferred so that the issues may be resolved in the context of trial. The sole issue in this case is whether Pfizer retaliated against Geiger for engaging in protected activity; the issue is not whether Geiger was disabled, whether Pfizer had a duty to accommodate Geiger, or whether Pfizer attempted to accommodate Geiger.

**B. Reference to Geiger as "Disabled," Having a "Disability," or "Regarded as Disabled"**

Pfizer asserts that because the words "disabled," "disability" and "regarded as disabled" have specific legal connotations, Geiger should not be permitted to use these words to describe her medical conditions. The motion to exclude these references is **GRANTED in Part** and **DENIED in Part**.

This Court has found that Geiger has a "disability" because she was "regarded as disabled," under 42 U.S.C. § 12102(3). This Court has also found, however, that Geiger is not disabled in the sense of having "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Though Geiger's

conditions meet the legal definition of "disability" under the ADA, because she was "regarded as disabled," there is a significant difference between plaintiffs who are actually disabled and plaintiffs who are only regarded as disabled. Namely, those who are only regarded as disabled, such as Geiger, have no right to a reasonable accommodation. For this reason, Geiger's disability discrimination claim has been previously dismissed by this Court.

Geiger, thereby, should be referred to as "regarded as/believed/perceived disabled." Geiger should not, however, be referred to as "disabled," having a "disability", or having "a physical or mental impairment that substantially limits one or more major life activities of such individual." Geiger's medical conditions should not be referred to as "disabilities," but rather they should be referred to as "regarded as/believed/perceived disabilities" or simply as "medical conditions." One of Geiger's main theories of the case is that Pfizer was motivated to retaliate against her for engaging in protected activity related to her medical conditions, because, at the time, it regarded her as disabled due to her medical conditions, and believed her medical conditions triggered additional rights under the law that Pfizer did not want to provide. It is therefore highly probative and relevant that Pfizer regarded Pfizer as disabled. Nevertheless, the probative value of allowing Geiger to present herself as "disabled" (rather than "regarded as disabled") is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

## C. Parties' Communications with the EEOC and OCRC

Pfizer asserts that the parties' communications with the EEOC and OCRC should be Excluded. The motion to exclude this evidence is **DENIED**.

In response to Geiger's OCRC and EEOC charges, Pfizer submitted position statements

and certain documents. These position statements and documents included information regarding Geiger's alleged disability, her request for an accommodation, accommodations that were offered to Geiger by Pfizer and discussions pertaining to these topics. Geiger also submitted numerous documents to the OCRC and EEOC on these same topics. Pfizer requests the Court redact and exclude any reference in such position statements and other documents to Geiger's disability status, the need for an accommodation, and/or the interactive process. Pfizer asserts that such evidence is particularly unfairly prejudicial and should be excluded given that the Court has already ruled that Geiger is not actually disabled, but rather only "regarded as disabled," and that her disability discrimination claim was dismissed on summary judgment.

Geiger argues that the charges of discrimination filed by Geiger are direct evidence that she engaged in a protected activity. Documents submitted to the OCRC and EEOC by Pfizer include admissions that she was paid substantially less and received lower pay increases than each of her colleagues in her district. Such evidence, Geiger asserts, is admissible to prove a prima facie case of retaliation and to calculate damages.

The Court finds that the charges of discrimination filed by Geiger are evidence she engaged in a protected activity, so the Court will not exclude any references to those charges. Pfizer has not shown that the information contained in the OCRC and EEOC filings is clearly inadmissable. This Court notes, however, the probative value of such evidence may be substantially outweighed by its prejudicial effect. This determination will be deferred to be resolved in the context of trial.

### D. 2004 Charge of Discrimination

Pfizer argues that Geiger's 2004 charge should not be introduced at trial as it contains

allegations of disability discrimination. The motion to exclude this evidence is **DENIED**.

Pfizer objects to admission of this matter on the same grounds that Pfizer objected to testimony regarding Geiger's alleged disability and claimed disability discrimination. Pfizer asserts that these documents are irrelevant, and that even if relevant, the probative value of such testimony or evidence is substantially outweighed by the danger of unfair prejudice to Pfizer.

On October 21, 2004, Geiger filed a charge of discrimination with the OCRC and the EEOC alleging that Pfizer refused to provide her a reasonable accommodation, discriminated against her because of an alleged disability, and retaliated against her for seeking an accommodation. Pfizer asserts that since the charge alleges more than just retaliation, the only claim now pending before the jury, the charge and any accompanying documentation should be excluded. Similarly, the Complaint sets forth multiple paragraphs relating to Geiger's claim for disability discrimination.

Pfizer will stipulate at trial that Geiger filed two charges of discrimination. As such, the existence of these documents will be presented to the jury. Pfizer asserts, however, that the information contained within these documents is irrelevant to Geiger's claim of retaliation and is highly prejudicial to Pfizer.

Geiger argues that the 2004 charge of discrimination filed by Geiger is relevant as direct proof that she engaged in protected activity – one of the prima facie elements of her retaliation. The document is also relevant to establish a time line of events and to show that Pfizer had a motivation to retaliate against Geiger. Geiger asserts that even if there is some negligible prejudice due to references to disability discrimination contained in the 2004 charge of discrimination, this Court has the plenary power to issue a limiting instruction to the jury

regarding such references if it deems it necessary to do so.

The Court finds that the 2004 charge of discrimination filed by Geiger is direct evidence she engaged in a protected activity, so the Court will not exclude that charge. The probative value of such evidence is not substantially outweighed by its prejudicial effect.

### E. Evidence or Arguments of Action Other than Geiger's 2004 and 2006 Performance Evaluations and Merit Increases

Pfizer asserts that evidence or arguments that any action other than Geiger's 2004 and 2006 performance evaluations and merit increases for those years is an adverse employment action must be excluded. The motion to exclude this evidence is **DENIED**.

Pfizer asserts that Geiger's claims are cognizable only as to her 2004 and 2006 performance valuations and merit increases for those years. Pfizer contends that Geiger's statements that other issues, such as isolation from management/other employees, criticism of her performance, etc. were adverse employment actions are not cognizable, and any such arguments must be excluded from trial. The ground for Pfizer's contention that other actions must be excluded is that they are not "adverse employment actions." Adverse actions are only those actions which result in a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem,* 378 F.3d 566, 575 (6th Cir. 2004). As such, Pfizer asserts, any description or characterization of other events as 'adverse employment actions" is highly prejudicial and should be excluded.

The Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) defines an action as "materially adverse" when it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. Material adversity require significant, not trivial harms. *Id.* The *Burlington Northern* Court gave this example:

> A supervisor's refusal to invite an employee to lunch is normally trivial, a
> nonactionable petty slight. But to retaliate by excluding an employee from a
> weekly training lunch that contributes significantly to the employee's professional
> advancement might well deter a reasonable employee from complaining about
> discrimination.

*Id.* at 69. This Court finds that the following actions, which occurred after Pfizer engaged in statutorily protected activity, may be significant harms that dissuade a reasonable worker from making or supporting a charge of discrimination: (1) Pfizer placed Geiger on an Immediate Action Plan; (2) Pfizer gave her two of the lowest performance review of her career; (3) Pfizer isolated her from management and other employees; (4) representatives of Pfizer chastised her in front of colleagues; (5) Pfizer routinely criticized her in front of her colleagues where others were not so criticized; (6) she was excluded from a list announcing award winners; (7) she was called names by her boss; (8) Pfizer pressured her to quit her employment; (9) Pfizer failed to pay for work-related expenses on her American Express card; (10) Pfizer continually incorrectly copied her drug inventories. Therefore, these actions are "materially adverse" and can be introduced at trial under the *Burlington Northern* standard.

### F. Reference to the Reasons Geiger Denied Long-Term Disability Benefits

Pfizer asserts the Court should exclude any reference at trial to the reasons underlying the recent denial of Geiger's long-term disability benefits. Pfizer asserts this decision was made in the sole discretion of CIGNA, not Pfizer. As such, any testimony regarding Geiger's denial of long-term disability benefits could improperly be imputed to Pfizer and could unfairly prejudice the jury against Pfizer. Geiger submits that she does not plan to make such references unless it becomes a relevant issue at trial. This Court finds that any probative value would be substantially outweighed by the danger of unfair prejudice. The motion to exclude this evidence is

**GRANTED**.

### G. Evidence not Based on Personal Knowledge which Constitutes Rumor, Speculation, or Hearsay

Pfizer asserts the Court should exclude any testimony by Geiger or other witnesses called on her behalf which is solely based on speculation and rumor and about which the testifying witnesses have no personal knowledge, including, but not limited to, testimony by Susan Weisman and/or Kris Diehl regarding the alleged conversation they overheard between Richard Ferguson and Matthew Garvic regarding Garvic's plan to "get Geiger out of Pfizer." The motion to exclude this evidence is **DENIED**.

Fed. R. Evid. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Accordingly, any evidence offered by Geiger or any other witness which is not based on personal knowledge should be excluded. The request, however, to exclude testimony not based on personal knowledge or which constitutes rumor, speculation, or hearsay is too general to warrant an order. Such issues would be better dealt with at trial on a case-by-case basis.

Testimony relating to an alleged conversation between two Pfizer employees, Richard Fergus and Matthew Garvic, may be excluded from the definition of hearsay as an admission of a party opponent. If however, Garvic did not participate in personnel decisions concerning Geiger or have any authority over Geiger, then such statements may not be admissible. *Jones v. Butler Metropolitan Housing Auth.*, 40 F. App'x 131, 135 (6th Cir. 2002). Pfizer has not established that the evidence is clearly inadmissable. This determination will be deferred to be resolved in the context of trial.

### H. Subjective Opinions by Geiger or Geiger's Witnesses

Pfizer moves this Court to exclude subjective opinions by Geiger or Geiger's witnesses regarding alleged retaliation against Geiger or the reasons for or fairness of the performance evaluations and merit increases. The motion to exclude this evidence is **DENIED**.

Pfizer asserts that whether Geiger was retaliated against is an objective standard determined by the court or jury based on the standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As such, Pfizer contends, any subjective evidence regarding the reasonableness of Pfizer's actions, Geiger's performance evaluation ratings and amount of merit increase, and whether Geiger was subjected to retaliation, is simply irrelevant and excludable.

Pfizer anticipates that Geiger will attempt to call witnesses who were not involved in making any decisions regarding Geiger's employment and who can only speculate as to the reason for, or reasonableness of, these decisions based on the limited information available to them. Pfizer asserts that witnesses who were not participants in Pfizer's decision as to rating Geiger's performance are in no position to give an opinion as to the reasons for it. Pfizer contends such opinions have no probative value and will result in irreparable and unfair prejudice to Pfizer.

Under Fed. R. Evid. 701, a lay witness may testify:

in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pfizer has not established that any of the opinions by lay witnesses regarding the reasons for or reasonableness of Pfizer's decisions are clearly inadmissible. This determination will be deferred to be resolved in the context of trial.

Pfizer also anticipates that Geiger may attempt to introduce her subjective opinions

through the use of third parties. Specifically, Pfizer contends, Geiger may attempt to have other witnesses testify regarding Geiger's statements and opinons relative to her allegations of retaliation. To the extent such witnesses attempt to introduce such statements for the truth of the matter asserted, as Geiger is available to testify, such opinons would be excluded as hearsay. This determination will be deferred to be resolved in the context of trial.

### I. Evidence of an Alleged Pattern of Discrimination or "Me Too" Evidence

Pfizer asserts that any evidence of an alleged pattern of discrimiantion or "me too" evidence is irrelevant and should be excluded. The motion to exclude this evidence is **DENIED**.

Pfizer anticipates that Geiger may: (i) seek to testify about other employees regarding their own (not Geiger's) employment experiences with Pfizer and/or (ii) call other employees to testify about their own (not Geiger's) claims of allegedly unfair treatment in the hope that such information might corroborate Geiger's claim of retaliation and/or create a generalized animus against Pfizer. Pfizer asserts that as this is not an adverse impact case, testimony concerning alleged discrimiantion or retaliation involving other employees is wholly unrelated to the issues in this case, i.e., whether Geiger herself suffered retaliation. Pfizer submits that evidence of this nature (concerning the experience of other employees) should be excluded because it would be unduly prejudicial to Pfizer and would cause jury confusion.

There is not a per se rule regarding the admissibility of "me too" evidence. *Sprint/United Mgmt. v. Mendelsohn*, 128 S. Ct. 1140, 1147 (2008). The "question whether evidence of discrimination by other supervisors is relevant in an individual [discrimination] case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 1147. Evidence must be analyzed for admissibility

under Federal Rules of Evidence 401 and 403. *Id.* at 1147.

This Court notes that "me too" evidence is relatively unwelcome in this Circuit. *Calderwood v. Omnisource Corp.*, No. 3:04 CV 7765, 2007 WL 2838969, at *5 n. 1 (N.D. Ohio Sept. 26, 2007), *citing see Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156-57 (6th Cir. 1988). A plaintiff generally must show that the same actors, reasons, and other circumstances were involved in order for such evidence to be admissible. *See id.* There must be evidence that logically or reasonably ties the decision to give Geiger poor performance reviews to the statements of the witnesses. *See Tuttle v. Tyco Electronics Installation Servs.*, Inc. No. 2:06-cv-581, 2008 WL 343128, *6 (S.D. Ohio Feb. 7, 2008). Pfizer has not established that the evidence is clearly inadmissable. This determination will be deferred to be resolved in the context of trial. If Geiger cannot tie the decision to give Geiger poor performance reviews to the statements or actions testified to by the witnesses, then such evidence will be excluded.

### J. Evidence Regarding the Circumstances Surrounding the Termination of George Loche and Richard Ferguson

Pfizer asserts that any evidence regarding the circumstances surrounding the termination of George Loche and Richard Ferguson should be excluded. The motion to exclude this evidence is **DENIED**.

Pfizer believes that Geiger will attempt to introduce evidence at trial surrounding the circumstances regarding Pfizer's employment termination of Loche and Ferguson, Geiger's former supervisors, which occurred at a time after the events complained of in this lawsuit and which had absolutely nothing to do with Geiger or the case at bar. Pfizer asserts that evidence that Loche and Ferguson violated Pfizer policy as to unrelated matters has no relevance whatsoever to Geiger's claim of retaliation. Rather, Pfizer asserts, the only purposes to be served

by such evidence is to embarrass the witnesses and cast Pfizer in an unfairly negative light, thereby leading the jury to punish Pfizer for the alleged impropriety of its former employees in matters unrelated to the case at bar.

Geiger contends that the circumstances surrounding Loche and Ferguson's termination is admissible to impeach their credibility and veracity as witnesses. Pursuant to Fed. R. Evid. 607, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." The improper behavior of these employees which led to their termination may impact their credibility. As such, this evidence is relevant, and Pfizer has not established that the probative value of this evidence is substantially outweighed by its prejudicial effect.

### K. Evidence as to Back Pay Damages and Benefits Allegedly Sustained

Pfizer asserts that Geiger should be precluded from testifying and introducing any evidence as to back pay damages and benefits allegedly sustained during any period of time she was unable to work due to an unrelated injury. The motion to exclude this evidence is **GRANTED**.

In May of 2007, Geiger was injured when she fell off her horse during a competitive horseback riding event. Since that time, Geiger has been unable to work due to this non-work related injury and has been on an approved leave of absence. Because Geiger has been unable to work since May of 2007 and has not attempted to return to work at Pfizer or seek other employment, Pfizer asserts that Geiger did not incur any lost wages or benefits due to any alleged retaliation from May of 2007 until the date of trial. Pfizer asserts, therefore, that Geiger is not entitled to back pay after May of 2007 and she should be precluded from testifying and/or introducing any evidence as to back pay damages and benefits allegedly sustained during that

period. Geiger asserts that such evidence may be necessary to clearly communicate to the jury the full calculation of damages that Geiger is entitled to for Pfizer's alleged violation of the law.

A plaintiff cannot recover damages for lost wages and benefits for any period of time she is unavailable to work, such as for periods of unrelated injury or disability. *Falls Stamping & Welding v. Int'l Union*, 485 F. Supp. 1097, 1101 (N.D. Ohio 1979) (deducting six weeks from back pay award for plaintiff's disability resulting from an unrelated automobile accident); *Hatton v. Ford Motor Co.*, 508 F.Supp. 620 (E.D. Mich. 1981) (awarding back pay beginning the date plaintiff was terminated until the date on which he became totally disabled because of a stroke and other illnesses and was no longer able to work); *Bender v. Salvation Army*, 830 F. Supp. 1454, 1456 (M.D. Fla. 1993) (finding that "[b]ecause periods of unavailability are excluded from computations of back pay, Plaintiff cannot recoup damages for the period of time that she would have been unable to work due to her injuries"); *Sennello v. Reserve Life Ins. Co.*, 667 F.Supp. 1498, 1520 (S.D. Fla. 1987) (denying back pay recovery to employee during the time that she was unemployed due to illness); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 401 (3d Cir. 1976) (periods when a plaintiff is unemployable because of illness should be deducted from back pay). As Geiger is not entitled to back pay or other benefits after May of 2007 due to her injury, she is precluded form testifying and/or introducing any evidence as to back pay or other benefits she is allegedly owed after May of 2007, as such evidence is irrelevant.

### L. Evidence Regarding Pfizer's Size, Financial Status, or Stature in the Pharmaceutical Industry

Pfizer asserts that Geiger should be precluded from presenting evidence regarding Pfizer's size, financial status, or stature in the pharmaceutical industry because such information if irrelevant and unfairly prejudicial. Pfizer asserts such evidence should be excluded during the

liability/compensatory damages phase of the trial. If liability is established, such information may be admitted during the punitive damage phase of trial (if any). The motion to exclude this evidence from the liability/compensatory damages phase of trial is **GRANTED**.

Pfizer asserts that introducing such evidence during the liability/compensatory damages phase of the trial may tempt the jury to decide the issue of an improper basis. Pfizer contends that the presentation of evidence of Pfizer's size, financial status, and stature could well result in a finding of liability based solely on that evidence. Pfizer is concerned that there is a risk the jury could hold Pfizer liable simply because Pfizer is a "big company" that can "afford it."

The Court finds that the probative value of evidence concerning Pfizer's size, financial status, and stature in the pharmaceutical industry is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice against Pfizer at the liability/compensatory damages phase. As such, this evidence is prohibited at that phase.

### M. Evidence Relating to Other Claims or Lawsuits Brought Against Pfizer

Pfizer asserts that evidence relating to other claims or lawsuits brought against Pfizer should be precluded. Geiger submits that she does not plan to make such references unless it becomes a relevant issue at trial. The motion to exclude this evidence is **GRANTED**.

### 3. The Court GRANTS in PART and DENIES in PART Geiger's Motions in Limine (doc. no. 102).

### A. Past and Current Litigation

Geiger moves the Court to exclude all evidence related to past and current litigation she has been and is involved in, other than the case at bar. Geiger asserts that any such evidence is not relevant to the issues presented in the pending litigation and, even if such evidence was relevant, its probative value is substantially outweighed by the danger of unfair prejudice and

would likely cause confusion among the jury members. Pfizer asserts it seeks to offer evidence of only one lawsuit, a lawsuit against Geiger's former employer, to show Geiger's bias or motivation, and other credibility evidence. The motion to exclude this evidence is **GRANTED**.

Geiger field a lawsuit against her former employer, Abbott Laboratories, claiming employment discrimination. As with her current lawsuit against Pfizer, Geiger claimed that she was subject to discrimination and retaliation in her duties as a medical sales representative for Abbott Laboratories. In the same manner, Geiger filed administrative charges with the OCRC against Abbott Laboratories prior to bringing her lawsuit against the company. Pfizer asserts the Abbott Laboratories lawsuit should be admitted into evidence (1) to show that Geiger has a bias against her employers in that she tends to assume that any action she disagrees with in her employment is based on a discriminatory and/or retaliatory reason; and (2) for credibility and impeachment purposes.

The Court does not find the evidence of the prior lawsuit to be relevant to the issues pending in the present litigation. And even if such evidence is marginally relevant, the Court finds that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice and would likely cause confusion amongst the jury.

### B. No Probable Cause Determinations

A portion of Geiger's protected activities involved the filing of two separate charges of discrimination with the OCRC and EEOC in October of 2004 and March of 2005. In each instance, the charge of discrimination was dismissed with a finding of no probable cause. Geiger seeks the exclusion of any references to the no probable cause determinations at trial. She asserts any such references would be prejudicial and would likely cause confusion amongst the jury.

The motion to exclude this evidence is **DENIED**.

The admission of administrative agency determination letters regarding an employment discrimination claim lies within the sound discretion of the trial court. *Heard v. Mueller Co.*, 464 F.2d 190, 194 (6th Cir. 1972); *cf. Weems v. Ball Metal and Chemical Div., Inc.*, 753 F.2d 527, 528 n.1 (6th Cir. 1985) (the EEOC cause determination, "in the sound discretion of the trial court, may be admitted in evidence"); *Bryant v. Martinez*, 46 F. App'x 293 (6th Cir. 2000) (decisions of administrative agencies relevant to the merits of a claim are admissible despite the possibility of some prejudicial effect). The Sixth Circuit has found that a district court does not abuse its discretion by permitting the introduction of the OCRC's determination if the district court "specifically instruct[s] the jury that it was free to disregard any conclusions contained in the report because the EEOC may not have had the same evidence as the jury had." *Blakely v. City of Clarksville*, 244 F. App'x 681, 683 (6th Cir. 2007); *see also Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (finding an EEOC letter of violation to be presumptively inadmissible, but a probable cause determination on the other hand, to be potentially admissible because it "is more tentative in its conclusions"). The argument is stronger for admission of an EEOC report when the EEOC is not a party to the litigation, as in this case. *See E.E.O.C. v. Sharp Mfg. Co. Of America*, No. 06-2611, 2008 WL 189847, at *2 (W.D. Tenn. Jan. 22, 2008) (when the EEOC is not a party to the litigation and has no interest therein, there is no reason to suspect any lack of trustworthiness). A court can find, however, that an EEOC determination has little probative weight and a possibility of great prejudice. *Wright v. Columbia Sussex Corp.*, No. 3:06-CV-190, 2008 WL 972699, at *1 (E.D. Tenn. Apr. 7, 2008).

Pfizer asserts that the OCRC documents Geiger seeks to exclude are highly probative as

to material issues in this trial because they directly relate to Pfizer's motives and the chronology between the Geiger's protective activities and her evaluation ratings and merit increases in 2004 and 2006. Pfizer asserts it is not introducing the OCRC findings to persuade the jury to adopt the findings of the OCRC. Based on these facts, it is proper to admit the OCRC findings in question. The Court will permit introduction of the OCRC findings to establish motive and chronology, with a "limiting instruction to the Jury indicating that the probable cause determination does not indicate that there was [not] in fact discrimination" *See Kennedy v. City of Zanesville, Ohio*, No. 2:03-cv-1047, 2008 WL 2036713, at *2 (S.D. Ohio May 9, 2008).

### 4. The Court DENIES Geiger's Motion for Leave to Take and Submit the Trial Video Deposition of Rick Ferguson, Due to Unavailability (doc. no. 114).

Geiger moves the Court for permission to take the video deposition of Rick Ferguson, Geiger's supervisor, and to introduce the deposition testimony at trial. According to Geiger, this is necessary because Ferguson lives in Arizona and will be unavailable to testify live at trial. Geiger explains that she was not permitted to take Ferguson's deposition during discovery "due to his employment with the company and subsequent departure from Pfizer," however, Geiger claims, defense counsel told her that she would have full access to Ferguson when he testified at trial. Now it appears that the defense will not call Ferguson at trial. Geiger asserts this is subjecting her to "unfair surprise." Geiger represents that she can arrange for the deposition to be taken before trial by video conference in Phoenix, Arizona.

Pfizer opposes Geiger's motion. In actuality, Geiger's counsel deposed Ferguson on October 17, 2007 in Columbus, Ohio. This deposition lasted approximately three and a half hours. Geiger had ample opportunity to fully question Ferguson on the retaliation claim. The entire deposition transcript was filed with the Court on February 21, 2008 (doc. no. 43). Geiger

specifically referenced and quoted from Ferguson's transcript in her Memorandum Contra to Defendant's Motion for Summary Judgment (doc. no. 70). Pfizer asserts it never made any assurances to Geiger that she would have "full access" to Ferguson at trial. There is no record of such an agreement.

Pfizer claims that Geiger's assertion that she was subject to "unfair surprise" because Pfizer is no longer calling Ferguson as a witness at trial is not a credible argument. The Court set April 6, 2009 as the date to identify trial witnesses and to designate the deposition testimony of witnesses who will not be called to testify (doc. no 87). Pursuant to this Order, Pfizer properly designated the specific portions of Ferguson's deposition transcript that it will read into the record at trial (doc. no. 106). Ferguson is a geographically distant witness who is no longer employed by Pfizer and has been fully deposed. Geiger did not file any objections to the selections identified by Pfizer.

If Ferguson is truly unavailable for trial, Geiger could have designated portions of Ferguson's transcript to read at trial. Pfizer contends it would consent if Geiger requests leave at this time to designate portions of Ferguson's transcript, despite the fact that the deadline for such filing has passed.

For the foregoing reasons, Geiger's motion to re-depose Ferguson is **DENIED**. The trial is less than two weeks away, and Geiger had ample opportunity to depose Ferguson. Because Pfizer has consented, Geiger is granted additional time to designate portions of Ferguson's transcript to read at trial. Geiger has until 4:00 p.m. on Thursday, April 23, 2009 to designate those portions. As another alternative, Geiger can arrange for Ferguson to testify live through a video stream from Phoenix Arizona. If this is arranged, Geiger must provide sufficient notice to

Pfizer so that Pfizer can arrange for documents needed for examination to be provided to

Ferguson.

**IT IS SO ORDERED.**

                             **s/Algenon L. Marbley**

                          **ALGENON L. MARBLEY**
                          **United States District Court Judge**

**DATE: April 15, 2009**